UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

EA DESIGNS AND COMPANY,

    Plaintiff,

v.                         Civil Action No. 2:19-cv-677

COASTAL ACCENTS, LLC, et al.,

    Defendants.

----------------------------------------

COASTAL ACCENTS, LLC,

    Counter and Third Party Plaintiff,

v.

EA DESIGNS AND COMPANY,

    Counter Defendant,

and

EMILY SHEIPE,

    Third Party Defendant.

## REPORT AND RECOMMENDATION

In this dispute arising from the sale of a North Carolina furniture store, competing Motions to Dismiss challenge the court's personal jurisdiction and the legal sufficiency of the claims asserted, ECF Nos. 4, 13.  Both motions were referred to the undersigned for a Report and Recommendation.  The court heard oral argument on January 28, 2020, and for the reasons set out in

detail below, now recommends that the court GRANT Defendants'
Motion to Dismiss ECF No. 4, for lack of personal jurisdiction,
and GRANT IN PART and DENY IN PART Counter Defendant and Third
Party Defendant's Motion to Dismiss the Counterclaim and Third
Party Claim, ECF No. 13.

## I.  Statement of the Case

Plaintiff EA Designs and Company ("EA Designs") operates a
retail furniture business trading as Coastal Accents and located
on Caratoke Highway in Popular Branch, North Carolina.  The
business was previously operated by Defendants, Coastal Accents,
LLC ("Coastal Accents"), Mary Rose, and James Rose (Collectively,
"Defendants"), and was sold to EA Designs under the terms of a
written Asset Purchase Agreement.  See Compl. Ex. A (ECF No. 1-2
at 11).  The Asset Purchase Agreement set out the terms of the
sale and specifically referred to several other transactions
contemplated as part of the asset transfer.  These transactions
were memorialized in separate written agreements, which were also
attached to the pleadings.  Specifically, the Roses, who owned the
real estate where Coastal Accents operated, entered into a Lease
Agreement with EA Designs for the premises and store building on
Caratoke Highway.  The Asset Purchase Agreement also referred to
a separate Supply Agreement between Coastal Accents and EA Designs,
whereby Coastal Accents agreed to purchase furniture from EA
Designs after the sale.

2

The parties to the Asset Purchase Agreement include EA Designs, Coastal Accents, and Mary M. Rose. Mary Rose signed the Agreement for Coastal Accents as its president and also as a member, with her signature captioned, "An Individual and Resident of North Carolina." The Asset Purchase Agreement contained the following clause related to jurisdiction for disputes arising under it:

> **10.3 Jurisdiction; Service of Process.**
> Any proceeding arising out of or relating to this Agreement or any of the transactions contemplated herein shall be brought in the courts of the City of Chesapeake, Virginia, and each of the Parties irrevocably submits to the exclusive jurisdiction of each such court in any such proceeding, . . . agrees that all claims in respect of the proceeding shall be heard and determined only in any such court and agrees not to bring any proceeding arising out of or relating to this Agreement or any of the transactions contemplated herein in any other court.

Asset Purchase Agreement § 10.3 (ECF No. 1-2, at 19-20).

Although the forum selection clause appears to relate to other contemplated transactions, each of those separate transactions is reflected in its own written agreement with a separate forum selection clause. For example, the parties to the Lease include James Rose and Mary Rose individually as Landlord and EA Designs as Tenant. The Lease Agreement contains its own forum selection clause, specifying that actions arising out of or related to it would be brought in North Carolina. Lease Agreement § 45 (ECF No. 1-2, at 35).

3

Finally, the Supply Agreement is between the two entities only, with EA Designs identified as Supplier and Coastal Accents as Purchaser. The Supply Agreement is signed by Emily Sheipe and Mary Rose, but only in their respective representative capacities. Like the Lease Agreement, the Supply Agreement contains its own forum selection clause stating that disputes arising under it "shall be exclusively filed and resolved in state or federal courts located in the Commonwealth of Virginia in the city of Chesapeake." Supply Agreement § 10.1 (ECF No. 1-2, at 48).

In addition to summarizing the terms of these various agreements, the Complaint alleges that EA Designs complied with its obligations under the Asset Purchase Agreement, including payment of the $100,000.00 purchase price and all rent payments as they became due. It also alleges that Defendants breached the Supply Agreement by failing to purchase the required volume of furniture and by failing to utilize EA Designs as their exclusive distributor of decorative furniture. Compl. ¶¶ 18-19, 21-23 (ECF No. 1-3, at 5-6). The Complaint seeks judgment against Coastal Accents and the Roses, asserting that the Roses are individually liable for the breach as they have "disregarded the corporate existence of Coastal Accents, LLC." Compl. ¶ 25 (ECF No. 1-3, at 6). The only facts alleged to support this veil piercing claim is that the Roses have intermingled funds, depositing rent checks

4

payable to the Roses personally into the Coastal Accents bank account.  Compl. ¶ 27 (ECF No. 1-3, at 6).

The Rose Defendants moved to dismiss the Complaint, alleging that neither one of them was subject to the personal jurisdiction of the court on the grounds alleged.  Affidavits attached to the motion establish that Mr. Rose has not lived or worked in Virginia since 1997.  He does not own property or hold any bank accounts in Virginia.  Nor is he registered to vote here.  Moreover, he states that the documents comprising the Asset Purchase Agreement and related contracts were drafted by the attorney for EA Designs and that he signed the Lease Agreement in his personal capacity in North Carolina.  J. Rose Aff. ¶¶ 5-10 (ECF No. 5-2).

For her part, Mary Rose states that she is not personally a party to the Supply Agreement, nor was she asked to be a party to the Supply Agreement.  She states the Agreements she did sign were all signed in North Carolina and that she is not a party to any other Agreements with Ms. Sheipe or EA Designs.  M. Rose Aff. ¶¶ 9-16 (ECF No. 5-1).  In addition to their jurisdictional challenge, the Roses both argue that the Complaint fails to state a claim under Rule 12(b)(6) because it alleges only a breach of the Supply Agreement (as to which neither is an individual party), and the allegations are insufficient to support a claim of veil piercing against either of them.

Coastal Accents answered the Complaint and asserted a Counterclaim against EA Designs and its president, Emily Sheipe, individually. According to the Counterclaim, Sheipe and EA Designs made various purchases of furniture and other business supplies and services, relying on Coastal Accents' trade credit with suppliers. According to the Counterclaim, this resulted in bank accounts belonging to Coastal Accents being charged for the services, rather than accounts belonging to either Sheipe or EA Designs. The Counterclaim also alleges that EA Designs requested various loans and advances from Coastal Accents to cover certain business creditor obligations, and that Coastal Accents advanced these funds with a specific expectation of repayment. It alleges these funds have not been repaid despite demand. Countercl. ¶¶ 8-14, 22 (ECF No. 6, at 6-8). The Counterclaim asserts three substantive counts – unfair and deceptive trade practices, unjust enrichment, and fraud under North Carolina law. It seeks damages of $27,891.99 (and trebled pursuant to North Carolina's Unfair and Deceptive Trade Practices Act) and $350,000.00 in punitive damages. Countercl. ¶¶ 23-34 (ECF No. 6, at 10-13).

Both EA Designs and Sheipe moved to dismiss the Counterclaim, with Sheipe arguing that it fails to sufficiently allege her individual liability, and EA Designs arguing that all three substantive counts are unsupported by the facts alleged. Although this second Motion to Dismiss matured immediately prior to oral

argument on the first, it was subsequently also referred to the undersigned for a Report and Recommendation.

At oral argument on the first motion, the court observed that the forum selection clause in the Asset Purchase Agreement likely would extend jurisdiction to Mary Rose, who signed the Agreement individually. But Defendants correctly noted that the Complaint did not allege any breach of the Asset Purchase Agreement, instead confining its claims to two separate counts alleging breach of the Supply Agreement. Plaintiff suggested that it might seek leave to amend, and to avoid a duplicate review of the same issues, the court withheld action on the pending motions and directed that any Amended Complaint be filed by February 4, 2020. Plaintiff did not file an Amended Complaint, and as a result, the deferred matters are ripe for review.

## II.   Standard of Review

### A.   Motion to Dismiss Under 12(b)(2)

A motion to dismiss under 12(b)(2) challenges personal jurisdiction. The plaintiff "bears the burden of proving to the district court . . . the existence of [personal] jurisdiction over the defendant by a preponderance of the evidence." New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005). In ruling on a motion under 12(b)(2), the court may look to both the plaintiff's and defendant's proffered evidence. PBM Prods. v. Mead Johnson Nutrition Co., No. 3:09-cv-269, 2009 WL

3175665, at *2 (E.D. Va. Sept. 29, 2009).   To evaluate the plaintiff's prima facie showing of jurisdiction, the court must construe relevant allegations in the light most favorable to the plaintiff, drawing all inferences in favor of the existence of jurisdiction.   New Wellington Fin. Corp., 416 F.3d at 294. Personal jurisdiction is asserted in two ways, general and specific.   CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 292 n.15 (4th Cir. 2009). General jurisdiction confers jurisdiction in the forum state "for any reason, regardless of where the relevant conduct occurred," and requires "continuous and systematic" contact with the forum state.   Id.   Specific jurisdiction, on the other hand, requires "only that the relevant conduct have such a connection with the forum state that it is fair for the defendant to defend itself in that state."   Id. (citing Helicopteros Nacionales De Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984)).

Specific jurisdiction is limited by the reach of the due process clause.   As a result, before exercising personal jurisdiction over a nonresident, the jurisdiction must be authorized by the state's long-arm statute, and it must comport with the due process requirements of the Fourteenth Amendment. Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 397 (4th Cir. 2003).   Relevant here, Virginia's Long-Arm Statute provides that a Virginia court may exercise personal

jurisdiction over a person "who acts directly or by an agent, as to a cause of action arising from . . . [t]ransacting any business" or contracting to supply services or things in this Commonwealth." Va. Code § 8.01-328.1(A)(1)-(2). As frequently noted, Virginia's Long-Arm Statute extends personal jurisdiction to the extent permissible by the due process clause, such that "the statutory inquiry merges with the constitutional inquiry." Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 277 (4th Cir. 2009). And the constitutional due process inquiry requires the defendant to have sufficient minimum contacts with the forum state such that maintenance of the suit would not offend "traditional notions of fair play and substantial justice." Id. (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). In the Fourth Circuit, courts utilize a three-prong test to consider whether a specific exercise of jurisdiction comports with the requirements of due process:

1.  The extent to which the defendant purposely availed itself of the privilege of conducting activities in the forum state;

2.  Whether the plaintiff's claims [arose] out of those activities; and

3.  Whether the exercise of personal jurisdiction is constitutionally reasonable.

Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 559 (4th Cir. 2014) (alteration in original) (quoting Tire Eng'g & Distrib., LLC v. Shan Dong Ling Long Rubber Co., 682 F.3d 292, 302 (4th Cir.

2012)). An assertion of jurisdiction is constitutionally reasonable if the defendant's activities suggest he should "reasonably anticipate being haled into court" in the forum state. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

**B.   Motion to Dismiss Under 12(b)(6)**

"A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A pleading fails to meet this standard and is subject to dismissal under Rule 12(b)(6) when it does not "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Factual allegations must be enough to raise a right to relief above the speculative level" and beyond the level that is merely conceivable. Twombly, 550 U.S. at 555. Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action" do not state a claim. Iqbal, 556 U.S. at 678.

The United States Supreme Court has described the motion to dismiss analysis in two parts. First, the court must accept the allegations of fact as true. Id. However, a court is not required

"to accept as true a legal conclusion couched as a factual allegation," Papasan v. Allain, 478 U.S. 265, 286 (1986), or a legal conclusion unsupported by factual allegations, Iqbal, 556 U.S. at 678-79. After reviewing the allegations, the court must then consider whether they are sufficient to state a plausible claim for relief.  This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.  A Rule 12(b)(6) motion, then, should be granted if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief."  Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

### III. Recommended Findings of Fact and Conclusions of Law

**A.   The Complaint fails to establish a factual basis for personal jurisdiction over James Rose and Mary Rose.**

The Complaint is premised entirely on a breach of the Supply Agreement, which was ancillary to the Asset Purchase Agreement confirming the sale of the Coastal Accents business.  That Supply Agreement is between the two entities, EA Designs and Coastal Accents and is signed by Mary Rose solely in her representative capacity.  Thus, neither Mary Rose nor James Rose assumed any individual obligations under the terms of the Supply Agreement.

The Complaint is also devoid of any allegations suggesting the Roses would be subject to either general or specific jurisdiction in a Virginia court apart from their relationship to Coastal Accents and its obligations under the Supply Agreement. In fact, the Roses' Affidavits and the affirmative allegations in the Complaint establish that both are residents of North Carolina, they established Coastal Accents as a North Carolina limited liability company, and that they signed all of the documents at issue in North Carolina. Compl. ¶¶ 2-3, J. Rose Aff. ¶¶ 3-11; M. Rose Aff. ¶¶ 4-16.

In its opposition to the Motion to Dismiss, EA Designs appears to concede that the facts alleged are insufficient to support personal jurisdiction over the Roses in their own right. But EA Designs argues that they are subject to the court's jurisdiction as the "alter egos" of Coastal Accents. Pl.'s Mem. Opp. Mot. Dismiss 5-7 (ECF No. 9) (citing Newport News Holding Corp. v. Virtual City Vision, Inc., 650 F.3d 423, 433-34 (4th Cir. 2011) (applying veil piercing to establish personal jurisdiction in Virginia over an Alabama corporation)).

"A court may pierce the corporate veil, and consistent with due process, exercise jurisdiction over an individual who otherwise would not be subject to the personal jurisdiction of the court, if the individual is an alter ego of a corporation that is subject to the court's jurisdiction." Bright Imperial Ltd. v. RT

MediaSolutions, S.R.O, No. 1:11-cv-935, 2012 WL 1831536, at *13
(E.D. Va. May 18, 2012) (citing Newport News Holding Corp., 650
F.3d at 433). And Coastal Accents is admittedly subject to
jurisdiction here under the plain language of the Supply Agreement.
But these facts are still insufficient to establish personal
jurisdiction over the Roses here because the Complaint does not
plausibly allege that they are the alter ego of Coastal Accents.

To establish personal jurisdiction under an alter ego theory,
EA Designs must show (1) "a unity of interest and ownership"
between the Roses and Coastal Accents, and (2) that the Roses used
Coastal Accents "to evade a personal obligation, to perpetrate
fraud or a crime, to commit an injustice, or to gain an unfair
advantage." Bright Imperial Ltd., 2012 WL 1831536, at *13 (quoting
Newport News Holdings Corp., 650 F.3d at 433); see also Cheatle v.
Rudd's Swimming Pool Supply Co., 360 S.E. 2d 828, 831 (Va. 1987)
(stating that the proponent of veil piercing must establish that
"the corporation was a device or sham used to disguise wrongs,
obscure fraud, or conceal crime").

Veil piercing is "an extraordinary exception," Cheatle, 360
S.E. 2d at 831, and considering all the evidence in the record,
Plaintiff's conclusory allegations of alter ego liability in this
case are not plausible. To begin with, the Asset Purchase
Agreement is a complex instrument, prepared by Plaintiff's
attorney, which clearly sets out separate responsibilities for the

Roses individually and their entity, Coastal Accents.  For example, the Lease Agreement – executed at the same time as the Supply Agreement – clearly states that the Roses owned the store property individually and not in the name of their entity.  But the Asset Purchase Agreement is between EA Designs and Coastal Accents, LLC, the owner of all the other business assets Plaintiff purchased in the transaction.  Other allegations in the Complaint establish that Coastal Accents had its own credit accounts with vendors, had its own bank accounts, and indeed continues to maintain a separate design business that purchased over $120,000.00 in furniture through EA Designs.  The Roses were not involved in these transactions individually (though the Complaint does allege James and Mary Rose were the primary actors on behalf of the corporation).  The only specific allegations of their supposed disregard of corporate formalities involve the claim that the Roses occasionally deposited rent payments payable to them personally into the accounts of Coastal Accents.  But even in the light most favorable to Plaintiff, this is insufficient to support a claim of alter ego liability under Virginia law.  There is no indication that depositing rent money due to the Roses individually into the accounts of their entity would somehow "disguise wrongs, obscure fraud, or conceal crime."  Cheatle, 360 S.E. 2d at 831.

    Although not pled in the Complaint, EA Designs' opposition to the motion to dismiss suggests that the Roses may somehow benefit

from Coastal Accents' alleged breach of the Supply Agreement. According to Plaintiff, a breach of the Supply Agreement would deprive EA Designs of revenue, which "could" cause EA Designs to default under the terms of the Lease Agreement, which, in turn, "could" cause the Roses to terminate the lease and retake possession of the premises. But no default has occurred, nor have the Roses asserted any of their rights as Landlord under the Lease Agreement. Moreover, EA Designs' allegation in this regard seems to be contradicted by the only jurisdictional facts which are alleged in the Complaint. If the Roses intended to use a default of the Supply Agreement by Coastal Accents to force termination of the lease, it is not clear why they would be depositing rent money due them individually into the accounts of Coastal Accents – the entity obligated under the Supply Agreement. The court's obligation to construe jurisdictional facts in the light most favorable to EA Designs does not extend to hypothetical defaults not alleged in the Complaint. Accordingly, the Complaint fails to set forth facts to show that the Roses are alter egos of their entity, Coastal Accents. Because no other basis for personal jurisdiction exists, the court should grant the Roses' motion under Rule 12(b)(2) of the Federal Rules of Civil Procedure and dismiss the claims asserted against them individually for lack of jurisdiction.

**B.   EA Designs and Sheipe's Motion to Dismiss the Counterclaim.**

Though styled in three counts, all the claims alleged in the Counterclaim[1] are premised on the same course of conduct. Defendant alleges that on several occasions Coastal Accents "advanced funds" to EA Designs with the "promise and expectation that such advances would be repaid." Countercl. ¶ 8 (ECF No. 6, at 6). These "advances" are enumerated in lettered paragraphs and relate primarily to expenses for the leased premises, including insurance, utilities, trash removal, and taxes. Countercl. ¶ 9 (ECF No. 6, at 6-8). At various other times, Sheipe is alleged to have placed orders for furniture using the accounts of Coastal Accents and then failed to pay for the items with the result that Coastal Accents was charged for the purchases, or their credit affected. Countercl. ¶¶ 15-21 (ECF No. 6, at 9-10). Finally, Coastal Accents specifically alleges on at least one occasion Sheipe withdrew funds from a Coastal Accents bank account and transferred the funds to cover payroll obligations of EA Designs. Countercl. ¶¶ 13-14 (ECF No. 6, at 8). Incorporating these factual allegations, the Counterclaim asserts counts under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C.

---

[1] The Counterclaim also alleges third party claims against Sheipe. For simplicity, this report refers to the pleadings as a Counterclaim.

Gen. Stat. § 75-1.1, as well as North Carolina unjust enrichment and fraud claims.  Countercl. ¶¶ 23-34 (ECF No. 6, at 10-13).

Sheipe and EA Designs argue these facts are insufficient to state a claim under any of the theories alleged, as the conduct described is all encompassed by the terms of the Asset Purchase Agreement.  At most, they argue, the Counterclaim asserts a breach of contract.  They urge the court to dismiss all of the pending business tort claims.  Separately, Sheipe argues the claims against her fail because she was not a party to any agreements with Coastal Accents, and the Counterclaim alleges no facts supporting her alter ego liability for the alleged breaches.

1.  <u>Third Party Defendant Emily Sheipe may be personally liable for her own tortious conduct.</u>

Sheipe first argues that the claims against her must fail because the Counterclaim alleges no facts to support a theory of veil piercing which would render her liable for the conduct of EA Designs.  Coastal Accents agrees that it has not pled such facts but argues that Sheipe is individually liable because she was the person who engaged in the allegedly tortious behavior.  Coastal Accents further argues that EA Designs is derivatively liable for Sheipe's conduct under the theory of respondeat superior.

In North Carolina, as in most jurisdictions, officers of a corporation can be held personally liable for torts committed by them, even when they act in an official capacity.  <u>Tasz, Inc. v.</u>

17

Indus. Thermo Polymers, Ltd., 80 F. Supp. 3d 671, 689–90 (W.D.N.C. 2015); Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 149 (4th Cir. 1987). The Counterclaim, unlike the Complaint, does not purport to seek contractual remedies. Both Sheipe and EA Designs are Virginia residents, and thus there is no obstacle to the court's personal jurisdiction with regard to the claims alleged. Accordingly, to the extent the allegations state a claim for tortious conduct by Sheipe, they may be properly asserted against her in her individual capacity.

   2.   The Counterclaim adequately pleads claims under the North Carolina Unfair and Deceptive Trade Practices Act (UDTPA).

The Counterclaim's first count under North Carolina's UDTPA requires that Coastal Accents plead and prove three elements: "(1) conduct constituting an unfair or deceptive act or practice; (2) conduct in or affecting commerce; and (3) actual injury proximately caused by the alleged wrongful conduct." Food Lion, Inc. v. Capital Cities/ABC, Inc., 951 F. Supp. 1224, 1230 (M.D.N.C. 1996)) (citation omitted). "A practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive." Dalton v. Camp, 548 S.E. 2d 704, 711 (N.C. 2001). However, "a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under [North Carolina's UDTPA]." Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir. 1998). Instead, the act proscribes only

practices that involve some type of egregious or aggravating circumstances. S. Atl. Ltd. P'ship of Tenn. v. Riese, 284 F.3d 518, 535 (4th Cir. 2001). But these acts do not have to be independently tortious. Though fraud is within its ambit, the statute covers more than common-law proscriptions of misrepresentation. Bumpers v. Comm. Bank of N. Va., 747 S.E.2d 220, 226 (N.C. 2013).

EA Designs and Sheipe argue that Coastal Accents' allegations are insufficient to allege anything other than a breach of the Asset Purchase Agreement. They observe that the Agreement defined certain assets to be conveyed, including all of Coastal Accents' "agreements, contracts, leases, consensual obligations, promises, or undertakings . . . related to the Business." Asset Purchase Agreement § 1.1(b) (ECF No. 1-2, at 12). Viewed in the light of this transaction, EA Designs and Sheipe argue that Coastal Accents' description of Sheipe's conduct at most alleges a breach of the Asset Purchase Agreement terms regarding the definition of "Assets" that were included in the sale.

It is possible to construe Coastal Accents' allegations to allege a breach of contract against EA Designs, but on a motion to dismiss the court is bound to construe the allegations and all reasonable inferences in favor of the non-moving party. Under that standard, and given the specific nature of the claim asserted, the Counterclaim adequately sets forth grounds for a claim under

19

the UDTPA.   Under the terms of the asset sale, Coastal Accents clearly retained its corporate existence as evidenced by the Supply Agreement.   As a result, Coastal Accents' allegations that Sheipe made unauthorized purchases charged to Coastal Accent's credit accounts, and that she moved money from Coastal Accents' bank account to cover EA Designs' payroll expenses state more than a simple breach of contract claim.   It is reasonable to infer such conduct would violate the UDTPA.

This is not to say every instance of wrongdoing described in the Counterclaim would state such a claim.   The court need not analyze each claimed violation to resolve the pending motion. Indeed, allegations that Coastal Accents "advanced money with an expectation of repayment" strongly suggests any alleged failure of repayment would amount to a garden variety breach with no aggravating circumstances.   But the failure of this specific fact to state a claim under the UDTPA does not diminish the strength of the other facts alleged to support relief under the statute.   The issue of which facts, if any, can be substantiated by proof presents a damages question for later resolution at summary judgment or trial.   Accordingly, the Counterclaim adequately pleads a claim under Count One and the court should deny the motion as to that count.

3.   The Counterclaim adequately pleads a claim for unjust
enrichment as to EA Designs but not as to Sheipe.

A claim of unjust enrichment is a common law remedy based on a contract implied by law.  Thus, when there is a contract between the parties, the contract governs the claim and the law will not imply different terms.  Se. Shelter Corp. v. BTU, Inc., 154 N.C. Ct. App. 321, 330 (2002).  In order to recover on a claim for unjust enrichment, Coastal Accents must prove that it conferred a benefit on either Sheipe or EA Designs, which one of them consciously accepted, and that the benefit was not conferred gratuitously or by an interference in the affairs of another party. Id.

Sheipe and EA Designs both argue the Counterclaim's allegations fall short of plausibly alleging the required element of conscious acceptance of benefits.  They note that many of the transfers alleged relate to expenses of the leased property, which was owned by the Roses.  Because the lease does not specify which bills were the Tenant's responsibility, they contend that inferring conscious acceptance of these benefits would be speculative.

But, as with their arguments under the UDTPA, this argument takes a narrow view of the facts alleged.  Dozens of transactions are alleged to have produced the damages alleged in the Counterclaim.  Many are unrelated to the lease.  It is reasonable

21

to infer that several of the identified transfers conferred a direct benefit on EA Designs in the operation of its business. But these corporate benefits do not extend to its owner, Sheipe, in her individual capacity. Coastal Accents concedes it is not attempting to allege any veil piercing or alter ego liability against her. Accordingly, the claim of unjust enrichment is adequately pled against EA Designs, but not against its owner Sheipe. The court should therefore grant Sheipe's motion to dismiss and deny EA Designs' motion to dismiss Count Two.

> 4.   The Counterclaim fails to plead fraud with particularity as required by Rule 9(b).

The third count of the Counterclaim alleges a cause of action for fraud, specifically incorporating two federal criminal statutes, 18 U.S.C. § 1343 (wire fraud) and 18 U.S.C. § 1344 (bank fraud). As both parties apparently recognize, neither of these criminal statutes creates a private cause of action. See Tribble v. Reedy, 888 F.2d 1387 (4th Cir. 1989); Hilgeford v. Nat. Union Fire Ins. Co., No. 3:08-cv-669, 2009 WL 302161, at *4 (E.D. Va. Feb. 6, 2009). Coastal Accents argues, however, that the Counterclaim adequately pleads a fraud count because conduct amounting to wire fraud and bank frauds within the meaning of those statutes, also constitutes fraud under the law of North Carolina. As a result, Coastal Accents claims that the factual allegations are sufficient to support Count Three.

In both federal court and in North Carolina state court, fraud must be pled with particularity.  Fed. R. Civ. P. 9(b); N.C. Gen. Stat. § 1A-1, Rule 9(b).  Ordinarily, particularity requires that the pleadings specify "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999).  Mere allegations of "fraud by hindsight" do not satisfy Rule 9(b).  Id. (citing Hillson Partners Ltd. P'ship v. Adage, Inc., 42 F.3d 204, 209 (4th Cir. 1994)).

Under this standard, it is far from clear that simply asserting that conduct violates the criminal statute is adequate to state a claim for common law fraud in North Carolina.  Such claims require the plaintiff to plead and prove:

(a)  That the defendant made a representation relating to some material past or existing fact;

(b)  That the representation was false;

(c)  That when he made it defendant knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion;

(d)  That the defendant made the false representation with the intention that it should be acted on by the plaintiff;

(e)  That the plaintiff reasonably relied upon the representation and acted upon it; and

(f)  That the plaintiff suffered injury.

23

<u>Freese v. Smith</u>, 110 N.C. Ct. App. 28, 34-35 (1993) (quoting <u>Myers</u> <u>& Chapman, Inc. v. Thomas G. Evans, Inc.</u>, 323 N.C. 559, 568 (1988)).

It seems Coastal Accents incorporated the federal criminal statutes in recognition of the fact that any alleged representations underlying their factual claims were directed to third parties, including banks, suppliers, and other vendors. As a result, even construing the facts in the light most favorable to EA Designs and Sheipe, they do not allege reliance or resulting damage with particularity. Whereas Counts One and Two specify damages in the amount of $27,891.99, the fraud count is limited to damages of just $4,881.90. It is not clear which transfers comprise this sum, but the Counterclaim appears to link damages to withdrawals from a Coastal Accents bank account. To constitute fraud, the representations related to these transfers must have been false when made and known to be false by the person making them. If such were the case, the damaged party (as in a case of bank fraud) would ordinarily be the banks or other companies accepting the unauthorized payment requests. The connection between these representations to third parties and the resulting damage to EA Designs is not specifically articulated in the Counterclaim. Accordingly, the facts which are alleged are insufficient to plead fraud with the particularity required by the Federal and North Carolina Rules of Civil Procedure. The court

should grant the motion to dismiss with respect to Count Three of the Counterclaim.[2]

## IV. Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that the court GRANT Defendants' Motion to Dismiss, ECF No. 4, for lack of personal jurisdiction and dismiss the claims against the Rose Defendants without prejudice; and GRANT IN PART and DENY IN PART the Counter Defendant and Third Party Defendant's Motion to Dismiss the Counterclaim and dismiss the claims for fraud and punitive damages against both Sheipe and EA Designs and the claim of unjust enrichment against Sheipe.

## V. Review Procedure

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of service of this report to the objecting party, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6 (a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an additional three (3) days, if service occurs by mail.

---

[2] Because the Counterclaim's punitive damages remedy is premised entirely on the claim of fraud, should this recommendation be sustained, the punitive damages claim should also be dismissed.

A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. <u>See</u> Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.   A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this court based on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).


/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

March 18, 2020